UNIVERSITY OF CINCINNATI,
Plaintiff–Appellant,

v.

ARKWRIGHT MUTUAL INSURANCE
COMPANY, Defendant–Appellee.

No. 94–3320.

United States Court of Appeals,
Sixth Circuit.

Argued March 23, 1995.

Decided April 17, 1995.

Edgar A. Strause (argued and briefed), Arthur E. Phelps, Jr., Vorys, Sater, Seymour & Pease, Columbus, OH, for. plaintiff-appellant University of Cincinnati.

W. Roger Fry, Jonathan P. Saxton, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, Katherine F. Zupan, Alan R. Miller (argued and briefed), Robins, Kaplan, Miller & Ciresi, Boston, MA, for defendant-appellee Arkwright Mut. Ins. Co.

Before: MILBURN and NORRIS, Circuit Judges; MILES, District Judge.*

* The Honorable Wendell A. Miles, United States District Judge for the Western District of Michi-gan, sitting by designation.

MILBURN, Circuit Judge.

Plaintiff University of Cincinnati appeals the district court's grant of defendant Arkwright Mutual Insurance Company's motion for summary judgment in this diversity action in which plaintiff seeks a declaration that the insurance policy it obtained from defendant covered the damages sustained by its property during the removal of asbestos prior to the demolition of the property. On appeal, the issues are (1) whether the district court erred in granting defendant's motion for summary judgment, thereby finding that the damage to plaintiff's property caused by the asbestos removal was not a "fortuitous" loss covered by plaintiff's all-risk insurance policy; (2) whether the district court erred by failing to grant plaintiff's motion for summary judgment and failing to find that the damages plaintiff sustained were insured losses resulting from physical damage rather than uninsured economic losses; (3) whether plaintiff's action is untimely in light of a provision in the insurance policy requiring all actions to be commenced within one year after the insured discovers the occurrence giving rise to the claim; and (4) whether coverage for plaintiff's asbestos-related losses is precluded by the insurance policy's exclusions for contamination and inherent vice. For the reasons that follow, we affirm.

## I.

### A.

In 1985, 1988, and 1991, plaintiff University of Cincinnati purchased from defendant Arkwright Mutual Insurance Company an "all-risk" property insurance policy to insure against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE" to plaintiff's real and personal property, except those risks or losses explicitly excluded under the terms of the policy. J.A. 15, 145.[1] Plaintiff's decision to seek all-risk insurance, rather than the standard "named peril" coverage it had previously utilized, was based on the desire to consolidate its coverage and benefit from the "broader coverage" against property damage offered by an all-risk policy. Prior to 1985 and plaintiff's decision to seek a single all-risk policy, plaintiff's property insurance portfolio had consisted of multiple layers of insurance provided by numerous insurers. This arrangement left gaps in plaintiff's coverage, although it was significantly less expensive than the single policy plaintiff obtained from defendant. Prior to 1985, defendant had written boiler and machinery policies for plaintiff.

One of the buildings covered by plaintiff's policy with defendant was a multi-story building known as Sander Hall, which was located at 45 West Charlton Street, in Cincinnati, Ohio. The building was constructed as a dormitory between 1969 and 1972 and served as a student residence facility until 1982. After a fire demolished part of the sixth floor, the building was closed and, except for occasional use, was primarily utilized as storage space. Plaintiff claims that structural and design problems unrelated to the presence of asbestos-containing materials ("ACMs") dictated that the building remain largely unused.

Plaintiff learned in 1983 that ACMs had been used in the construction of Sander Hall, a 29–story building. (Defendant claims that the building was 27 stories tall.) There is no evidence, though, that plaintiff had made plans to remove the ACMs or to demolish Sander Hall by 1985, when defendant first issued the all-risk policy to plaintiff. In July 1989, however, plaintiff completed a cost-benefit analysis that weighed the possibility of renovating Sander Hall against the cost of demolition and concluded by recommending demolition. On December 13, 1989, plaintiff's Board of Trustees voted to demolish Sander Hall because it was not suitable for any use without major renovation. The presence of the ACMs does not appear to have been a factor in the trustees' decision. However, removal of the ACMs prior to demolition was required both by Ohio law, Ohio Admin. Code § 3745–20–01 *et seq.*, and by federal regulation, 40 C.F.R. §§ 61.145 and

---

1. The 1985 policy was a first-party property insurance policy effective from July 1, 1985, to July 1, 1988 (the "1985 policy"). The 1988 policy was a first-party property insurance policy effective from April 1, 1988, to April 1, 1991 (the "1988 policy"). Appellee's Brief at 3.

61.150,[2] and the trustees clearly acted with knowledge that the ACMs would have to be removed before demolition could take place.

In order to move forward with the planned demolition, plaintiff hired a private consulting firm to perform an environmental assessment of Sander Hall. In May 1990, the consulting firm recommended to plaintiff that all of the ACMs in Sander Hall be physically removed prior to demolition, except for a few ACMs located in the roof and floor of the building that posed little risk of releasing asbestos fibers into the air during the implosion process. This recommendation effectively warned plaintiff that destruction of the interior of Sander Hall was certain if plaintiff chose to proceed with the planned demolition of the building. Plaintiff stuck to its decision to demolish the building, and the process of removing the ACMs from Sander Hall began in July 1990. In accordance with the consulting firm's recommendation, workers tore out walls, ceilings, and interior and exterior panels of the building. The asbestos removal was completed in June 1991, and the demolition was accomplished through implosion of the building on June 23, 1991. The cost of the removal totaled approximately $2,204,-253.00.

Plaintiff, through its legal counsel, sent a notice of loss to defendant on March 27, 1991, requesting payment for the cost of removing the ACMs from Sander Hall under the terms of its all-risk policy. A proof of claim was filed on or about June 27, 1991. Defendant denied coverage for the claimed expenses on September 12, 1991. There is no indication that plaintiff ever considered whether defendant's all-risk policy covered costs incurred in connection with asbestos removal or that any representative of plaintiff ever discussed the subject with defendant prior to the assertion of plaintiff's asbestos-related claim. Moreover, the word "asbestos" does not appear in either the 1985 or the 1988 policy.

**B.**

Plaintiff commenced this action on October 15, 1991. In its complaint, plaintiff requested a declaration that the cost of removing the ACMs was within the coverage of plaintiff's 1985 and 1988 policies and a judgment for the amount of the expenses. Plaintiff claimed that "the presence of asbestos-containing materials in Sander Hall" was the physical loss or damage it had sustained; it did not refer to the damage to the building caused by the removal process.[3] J.A. 10. Both parties moved for summary judgment on November 30, 1992. The magistrate judge reviewing the motions recommended that the district court grant defendant's motion for summary judgment on the ground that the damage sustained by plaintiff during the asbestos removal process was not "fortuitous" and thus was not covered by the all-risk policy. The district court adopted the magistrate judge's recommendation. On February 24, 1994, the district court issued an order granting defendant's motion for summary judgment, denying plaintiff's motion, and dismissing plaintiff's complaint with prejudice. This timely appeal followed.

**II.**

**A.**

Plaintiff argues that the district court erred in granting defendant's motion for summary judgment and in holding that the property damage caused by the removal of the ACMs from Sander Hall was not a "fortuitous" loss covered by plaintiff's all-risk insurance policy with defendant. Plaintiff argues that the damages were the result of a fortuitous loss since the asbestos removal was not contemplated at the time the policy was entered and was not certain to occur. Because plaintiff is a citizen of the State of Ohio, defendant is a corporation incorporated in the State of Massachusetts, and the amount in controversy exceeds $50,000, this court will exercise its diversity jurisdiction

---

2. The early removal of the ACMs alleviates the risk that large quantities of asbestos fibers will be released into the air during demolition. Such a release would pose a significant health risk to the public.

3. Plaintiff now appears to be proceeding under only the 1988 policy and furthermore, appears to claim only that the removal of the ACMs from Sander Hall, not their mere presence in the building, caused the damages plaintiff sustained.

and will be bound by Ohio substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The facts in this case are not in dispute, so we must consider only whether the district court erred in determining that plaintiff's damages did not constitute a fortuitous loss sufficient to trigger the provisions of the all-risk policy issued to plaintiff by defendant.

"We review a district court's grant of summary judgment de novo." *Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). "[D]e novo review permits us to draw our own inferences and legal conclusions from the record...." *Lancaster Glass Corp. v. Philips ECG, Inc.,* 835 F.2d 652, 658 (6th Cir.1987). Under Federal Rules of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See LaPointe v. United Autoworkers, Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In considering a motion for summary judgment, "[t]he court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Kunz v. United Food & Commercial Workers, Local 876,* 5 F.3d 1006, 1009 (6th Cir.1993) (quoting *Massey v. Exxon Corp.,* 942 F.2d 340, 342 (6th Cir.1991)). *See also Stein v. National City Bank,* 942 F.2d 1062, 1064 (6th Cir.1991) (concluding that the proper inquiry in considering a motion for summary judgment is whether there are any factual issues that can be resolved only by a finder of fact because the evidence is susceptible to interpretation in favor of either party). The evidence, all facts and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)).

"The Court must adopt the construction of [an] insurance contract which most nearly corresponds with the intention of the parties as ascertained from the words employed by them in their plain, ordinary and usual meaning." *River Servs. Co. v. Hartford Accident & Indem. Co.,* 449 F.Supp. 622, 626 (N.D. Ohio 1977). Ohio courts called upon to interpret insurance policies must construe the provisions of those policies strictly against the insurer only when the policy provisions are ambiguous. *Sutton v. Spencer,* 56 Ohio App.3d 147, 565 N.E.2d 854, 856 (1989). Moreover, any reasonable interpretation of an insurance policy that results in coverage for the insured must be adopted. *River Servs.,* 449 F.Supp. at 626.

Unlike a named peril insurance policy, an all-risk insurance policy extends coverage "to risks that are not ordinarily included in other types of insurance coverage." *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. 978, 987 (S.D. Ohio.1975). However, not all property risks are covered by such a policy. *Essex House,* 404 F.Supp. at 987; *see also Aetna Casualty & Sur. Co. v. Yates,* 344 F.2d 939, 940 (5th Cir.1965) (calling the term "all-risk" a misnomer). An all-risk policy does not cover risks that are either specifically excluded from coverage by a provision in the policy or losses that occur as a result of the insured's fraud or other misconduct. *Essex House,* 404 F.Supp. at 993; *C.H. Leavell & Co. v. Fireman's Fund Ins. Co.,* 372 F.2d 784, 787 (9th Cir.1967). In addition, an all-risk policy, like any other insurance policy, insures only against fortuitous losses. *Essex House,* 404 F.Supp. at 987; *Compagnie Des Bauxites De Guinee v. Insurance Co. of N. Am.,* 554 F.Supp. 1075, 1080 (W.D. Pa.1983), *rev'd on different grounds,* 724 F.2d 369 (3d Cir.1983).

In order to withstand defendant's motion for summary judgment, plaintiff was required to present evidence (1) that it sustained a physical loss and (2) that the loss was the result of a fortuitous event. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 703 F.Supp. 1313, 1317 (N.D. Ill.1988), *aff'd,* 915 F.2d 316 (7th Cir.1990). In granting defendant's motion for summary

judgment, the district court adopted the recommendation of the magistrate judge, who found that plaintiff's removal of the ACMs from Sander Hall "was not even remotely fortuitous," J.A. 247, because plaintiff voluntarily elected to demolish the building despite the knowledge that removal of the ACMs was required in order to effectuate the demolition. The magistrate judge also found that because plaintiff knew, or should have known, prior to the start of the asbestos removal process, that Sander Hall would sustain significant damage as a result of the removal process as well as the significant amount of ACMs to be removed, there was no element of surprise, nor anything unexpected, about the property damage incurred by plaintiff. Accordingly, the magistrate judge found, and the district court agreed, that there was no fortuitous event invoking the coverage supplied by plaintiff's all-risk insurance policy. Plaintiff argues that in reaching this conclusion, the district court improperly construed the scope of the fortuity exception.

The question of whether plaintiff's removal of the ACMs from Sander Hall prior to demolition of the building constituted a fortuitous event under plaintiff's insurance policy is an issue of law for the court to decide. *Intermetal Mexicana, S.A. v. Insurance Co. of N. Am.,* 866 F.2d 71, 74 (3d Cir.1989). The application of the implied requirement of fortuity is "universally recognized," *Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 775 (10th Cir. 1989); *Midwest Specialties, Inc. v. Westfield Ins. Co.,* No. 14027, 1994 WL 107192, *16 (Ohio Ct.App.1994) (unpublished disposition), and in *Derby v. Westminster Found. of Ohio,* 90 Ohio App. 31, 103 N.E.2d 10, 11–12 (1951), the Ohio Court of Appeals adopted the definition of a fortuitous event found in the Restatement of Contracts § 291, cmt. a (1932), which defines a fortuitous event as one

> which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties.

*Derby,* 103 N.E.2d at 12; *see Peters Township Sch. Dist. v. Hartford Accident & Indem. Co.,* 833 F.2d 32, 37 (3d Cir.1987). A fortuitous event is an event " 'occurring by chance without evident causal need or relation or without deliberate intention.' " *Avis v. Hartford Fire Ins. Co.,* 283 N.C. 142, 195 S.E.2d 545, 548 (1973) (quoting Webster's Third New International Dictionary 895 (1961)); *see also Fidelity and Guar. Ins. Underwriters, Inc. v. Allied Realty Co.,* 238 Va. 458, 384 S.E.2d 613, 615 (1989) (discussing the concept of a fortuitous event as analogous to the insurance definition of an "accident," which " ' "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous" ' "). In addition, the design of all-risk insurance, to " 'extend protection against the kind of "fortuitous loss" which is not usually covered under other insurance,' " *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.,* 26 Mass.App.Ct. 374, 527 N.E.2d 1179, 1180 (1988), demonstrates that insurers are offering protection against unexpected, accidental occurrences that are difficult for persons seeking insurance to designate in advance, as is required under traditional named-peril insurance policies. This view of fortuity is consistent with the idea that "[i]nsurance should only cover losses resulting from a casualty. There is no casualty unless some risk is involved." *Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 F.Supp. 164, 191 (D.Conn.1984) (citations omitted).

In this case, plaintiff voluntarily elected to remove the ACMs from Sander Hall in order to move forward with the planned demolition of the building. Plaintiff was not surprised that the asbestos removal process harmed the interior of Sander Hall; it was informed of the probable damage by the engineering consultant's report in May 1990. "It is generally recognized that ... '(I)nsurance contracts do not cover economic detriment that is not fortuitous from the point of view of the person (usually the insured) whose detriment is asserted as the basis of the insurer's liability. For example, a loss is not fortuitous in this sense if caused intentionally by that person.' " *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136, 141 (Ind. Ct.App.

1981) (quoting *Robert E. Keeton & Alan I. Widiss, Insurance Law* § 5.3(a) (1971)). Moreover, a fortuitous loss is not one "which the assured brings about by his own act, for then he has not merely exposed the goods to the chance of injury, he has injured them himself." *Avis*, 195 S.E.2d at 548. Thus, the courts generally do not recognize deliberate actions that produce predictable and anticipated damages as fortuitous events under all-risk insurance policies. *See New York State Elec. & Gas Corp. v. Lexington Ins. Co.*, 204 A.D.2d 226, 612 N.Y.S.2d 43, 43 (1994) (finding that plaintiff's deliberate removal of a component from its generating plant, which resulted in expected downtime, was not a fortuitous event under an all-risk insurance policy); *see also Great Northern Ins. Co. v. Dayco Corp.*, 620 F.Supp. 346, 351 (S.D.N.Y. 1985) (noting that all-risk insurance protects the insured against "unexplained" losses).

■ Any analysis of fortuity involves an examination of whether plaintiff caused and intended the consequences that resulted in its claim for damages. Robert E. Keeton and Alan I. Widiss, *Insurance Law* § 5.3(a), at 475 (1988). In this case, plaintiff's losses were neither unanticipated nor unintended. The decision to demolish Sander Hall and the consequent decision to remove the ACMs from the building before the demolition were solely in the discretion of plaintiff's board of trustees. It can hardly be argued that the damage to the building brought on by the asbestos removal process was a matter of chance when plaintiff exercised total control over whether and when such damage would occur and possessed discretion to execute its own loss. *See Intermetal Mexicana*, 866 F.2d at 77–78 (finding that insured's creditor's seizure of equipment was not fortuitous because it was not "outside the parties' realm of control"). Plaintiff's general counsel admitted that "there is no emergency that required it to be demolished at any particular time" and that "[t]his building had a long and unhappy history and putting it out of its misery was probably a good political decision." J.A. 361. Moreover, plaintiff concedes that "the asbestos-containing materials presented no danger whatsoever to occupants of the building and that Sander Hall could have been left in its original condition if

the University had been able to find a use for the building that was consistent with its non-asbestos structural limitations." Appellant's Brief at 11–12. Thus, the damage flowing from the asbestos removal prior to demolition of Sander Hall can hardly be deemed accidental or "dependent upon chance." *See Essex House*, 404 F.Supp. at 989. Instead, it was the result of deliberate business planning by plaintiff; *cf. Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1318 (5th Cir.1982) (denying coverage where the court found that the original act by the insured was intentional and that the damage caused to the insured as a legal consequence of that act was expected).

Were we to ignore plaintiff's control over its loss in deciding the fortuitousness of plaintiff's claim, we would convert plaintiff's all-risk insurance policy into a cash fund for plaintiff's business plans. Plaintiff essentially invites this court to find that its intentional destruction of property is covered under its insurance policy. We decline this invitation and find that "it is against public policy to allow insurance coverage on a certainty." *Intermetal Mexicana*, 866 F.2d at 77; *see Compagnie Des Bauxites*, 554 F.Supp. at 1083. To allow recovery for an insured such as plaintiff, who undertakes deliberate damage-inducing actions with known consequences, would undermine the function of insurance as the sharing of unpredictable risks of damage. We agree with the district court that plaintiff's losses stemming from its deliberate actions, taken with full awareness of the probable and intended consequences, cannot be considered fortuitous and that "the concept of risk that is inherent in all policies of insurance is lacking." *Intermetal Mexicana*, 866 F.2d at 78.

Plaintiff urges this court to find that the courts in Ohio would follow a recent line of decisions that hold a loss fortuitous so long as "neither party knew of the defect or expected the loss" at the time the policy was issued. *Adams–Arapahoe*, 891 F.2d at 775 (characterizing these cases as the "clear trend of authority"). Plaintiff asserts that if such a view is not taken, the district court's holding would mean that a loss sustained by an insured is not fortuitous even if it is not

intended or desired by the insured, and even if it was not certain to occur at the time the insurance policy was entered, as long as it is an incidental and unavoidable consequence of the insured's use of its property. We disagree with plaintiff's interpretation of the district court's holding.

Plaintiff emphasizes that "a new definition of the term 'fortuitous' has emerged," *Underwriters Subscribing to Lloyd's Ins. Certificate No. 80520 v. Magi, Inc.,* 790 F.Supp. 1043, 1047 (E.D. Wash.1991), which compels the courts to inquire into fortuity by "examin[ing] the parties' perception of risk at the time the policy was issued." *Underwriters,* 790 F.Supp. at 1048; *Adams–Arapahoe,* 891 F.2d at 775. Further, plaintiff points to language in the definition of a fortuitous event adopted by the Ohio Court of Appeals in *Derby* that provides that a fortuitous event may include "a past event ... provided that the fact is unknown to the parties." *Derby,* 103 N.E.2d at 12. We believe that the new definition of fortuity that plaintiff stresses is less a new definition than a new perspective. Under the so-called modern approach, the courts have begun to view the determination of fortuity as a subjective inquiry, based on what the parties knew or reasonably should have known at the time the policy was entered, rather than as an objective determination based on hindsight, *Adams–Arapahoe,* 891 F.2d at 775; *Underwriters,* 790 F.Supp. at 1048. We find that this new, subjective approach to the determination of fortuity does not negate the requirement that fortuitous losses result from chance. Plaintiff has not cited a single case in which a court has abandoned the notion that a fortuitous event must be outside the control of the insured or the result of chance. Plaintiff rests its argument on the knowledge of the parties as to the certainty of the loss but ignores the separate requirement that a fortuitous loss be beyond the control of the insured, a "risk." Thus, we find the authority relied upon by plaintiff distinguishable from this case.

In *Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am.,* 724 F.2d 369 (3d Cir.1983), the Third Circuit found that losses due to a business interruption, caused by the insured's cessation of production for repair of improperly constructed equipment, was a fortuitous loss under an all-risk business interruption policy. *Compagnie,* 724 F.2d at 372–73. Analogizing to *Compagnie,* plaintiff argues that its "loss was 'fortuitous' even though it would inevitably occur *if* [plaintiff] ever demolished the building," just as the insured's loss in *Compagnie* was fortuitous despite the fact that it was certain to occur if the insured stopped production to repair the faulty equipment. Appellant's Brief at 11. Plaintiff asserts that in both cases the losses were only contingent risks at the time the respective insurance policies were issued, making them fortuitous events for purposes of determining coverage.

However, in *Compagnie,* the insured's cessation of production, while deliberate, was a reaction to an unanticipated defect in its equipment, which defect the insured was unaware of until after the damage occurred. *Compagnie,* 724 F.2d at 371. It was unexpected physical damage to the insured's production equipment, not the decision to cease production during repairs, that caused the loss in *Compagnie.* The insured did not make a conscious decision to purchase a defective system that would then require it to shut down production for a known and anticipated length of time and suffer known and predictable damages. Thus, whereas the insured in *Compagnie* did not intentionally cause its loss, plaintiff in this case did intentionally decide to demolish Sander Hall and consequently, to first remove the ACMs from the building. We note again that the decision to demolish the building was made with the knowledge that destructive asbestos removal procedures were required in order to effectuate the demolition. Plaintiff makes much of the fact that it did not intend to demolish the building, and thereby incur costs for asbestos removal, at the time it entered the 1988 policy. However, because plaintiff indisputably knew of the presence of the ACMs when it entered the 1988 policy, this evidence merely highlights the control plaintiff exercised over whether and when to incur asbestos removal costs. The insured in *Compagnie* was reacting to an unforeseen difficulty over which it had no control. Here plaintiff was not reacting to an unknown and

unforeseen defect in Sander Hall but was pursuing a business plan based on considerations of costs and benefits.

Similarly, plaintiff relies on *Insurance Co. of N. Am. v. U.S. Gypsum Co., Inc.,* 870 F.2d 148, 151–52 (4th Cir.1989), in which the Fourth Circuit found that the loss at issue was fortuitous because the insured did not know at the time the policy was issued that the loss was certain to occur during the policy period, although it did know there was a possibility of that type of loss occurring. *Insurance Company,* 870 F.2d at 152 ("[T]he fact that it is known that subsidence [and the resulting property damage] will occur does not mean that it will occur during the policy period."); *see also General Am. Transp. Corp. v. Sun Ins. Office, Ltd.,* 369 F.2d 906, 908 (6th Cir.1966) (finding damage fortuitous despite the fact that it occurred as a result of a defect in equipment that would have inevitably caused injury); *Essex House,* 404 F.Supp. at 993 (finding property damage resulting from a defect in the design of a building fortuitous because it could not be predicted when the defective design would lead to damage or whether it would cause damage within the policy period); *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 697, 377 P.2d 889, 897 (1963) (same). We do not find the inevitability of the loss controlling in this case. Here, it could not be predicted whether plaintiff would sustain property damage during the period of the policy because the decision was fully within plaintiff's control. This case involves a decision by plaintiff that actually caused the damage about which plaintiff now complains. Yet, the cases cited by plaintiff all involve situations in which the insured was reacting to unpredictable, unintentional damage to its property. Thus, we conclude that, consistent with the authority cited by plaintiff, fortuity involves unexpected damage, the occurrence of which is outside the control of the parties.

We have not overlooked the fact that had defendant wanted to exclude coverage for this contingency, namely, the removal of asbestos in buildings soon to be demolished, it could easily have done so. However, although we expect an insurer to be explicit about exclusions from its coverage, we believe it is an unreasonable burden to require defendant to anticipate every business decision an insured might make that could produce costs unanticipated at the time the policy was entered.

■ By affirming the district court's decision, we do not hold, as plaintiff suggests, that "any loss that is an incidental and unavoidable consequence of an insured's voluntary use of its property" is excluded from coverage despite the fact that the loss is "neither intended nor desired by the insured." Appellant's Brief at 14.[4] Instead, we conclude that inasmuch as the state courts in Ohio have adopted a definition of fortuitous events that limits such events to those "which so far as the parties to the contract are aware, [are] dependent on chance," *Derby,* 103 N.E.2d at 12, we are bound to hold that when an insured makes a deliberate decision to take an action that produces known consequences and causes predictable damage to its property, the damages sustained are not the result of a fortuitous event covered under an all-risk insurance policy.

### B.

Because of our disposition of the first issue in this case, we find it unnecessary to review plaintiff's remaining issue, that the district court erred in denying plaintiff's motion for summary judgment, or defendant's other arguments, setting forth alternative grounds for affirming the district court's grant of defendant's motion for summary judgment.

We would also point out that it is difficult to understand how plaintiff sustained any

---

4. In order to illustrate its point, plaintiff argues that the district court's holding would preclude insurance coverage for business losses sustained if a manufacturer temporarily halted production to repair damage to its equipment or if a business voluntarily summoned the fire department to a fire at its facilities, which resulted in water damage to the insured property. In neither of these cases, however, is the insured's voluntary action the cause of the damage; the insured parties in these examples are reacting to unplanned, unanticipated events causing unintentional damage to their property.

damages to its building in connection with the asbestos removal prior to demolition of the building. Plaintiff determined to remove the ACMs in the building before demolishing it in order to comply with state and federal law. Thus, the cost of the asbestos removal was simply a part of plaintiff's cost to demolish the building. Since the building was to be demolished, any physical damage resulting from the asbestos removal is immaterial.

### III.

For the reasons stated, the judgment of the district court is AFFIRMED.