**Inez Jean SEALS, Plaintiff,**

v.

**DELTA AIR LINES, INC., Defendant.**

No. 1:95–cv–040.

United States District Court,
E.D. Tennessee.

Jan. 22, 1996.

Stephen T. Greer, Dunlap, TN, for Plaintiff.

John W. Baker, Jr., Baker, McReynolds, Byrne, Brackett, O'Kane & Shea, Knoxville, TN, for Defendant.

### MEMORANDUM

EDGAR, District Judge.

This diversity case involves personal injuries sustained by the plaintiff Inez Jean Seals ("Seals") while a passenger of defendant Delta Air Lines, Inc. ("Delta"). The case is currently before the Court on Delta's motion for summary judgment (Court File No. 10). For the reasons expressed in this memorandum, the motion for summary judgment will be **DENIED.**

### I. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment will be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *University of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1280 (6th Cir.1995); *White v. Turfway*

*Park Racing Ass'n, Inc.,* 909 F.2d 941, 943 (6th Cir.1990); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White,* 909 F.2d at 943–44; *60 Ivy Street,* 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *60 Ivy Street,* 822 F.2d at 1435–36. The standard for summary judgment mirrors the standard for directed verdict. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; University of Cincinnati,* 51 F.3d at 1280; *LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993).

## II. Facts

The plaintiff's sister, Marie Long, made reservations for herself, her son Monte Long, and plaintiff to fly Delta Air Lines from Chattanooga to Killeen, Texas. The trip was scheduled to take place, and indeed did take place, on January, 5, 1994. The first leg of the trip was from Chattanooga to Atlanta, Georgia. From Atlanta, the next flight went to Dallas/Fort Worth. Another change was to take place at D/FW, this time to a commuter flight which would terminate in Killeen. Mrs. Long made the reservations by calling a toll-free 800 reservation number operated by Delta.

Plaintiff contends that there was extensive discussion between Mrs. Long and the Delta reservation agent regarding assistance to be given to plaintiff at the two airports where she would have to change planes. She claims that the agent assured Mrs. Long that she would be provided with either a wheelchair or motorized cart to transport her between gates. She claims that this assistance was necessary because of her extensive back problems, which made it difficult for her to walk long distances.

At the Chattanooga airport, plaintiff and her companions did not require assistance, as they were able to arrive in plenty of time to make it to the gate without hurrying. In Atlanta, she was provided with assistance on the ground. However, the flight to Dallas was delayed and arrived late, as the announcement was being made that the commuter flight to Killeen was boarding. There was no assistance awaiting the plaintiff at the gate where she arrived. She asked the agents at the gate where her promised wheelchair was, and was told there was not one there. She claims that the agents acknowledged that there was supposed to be one there. Anxious not to miss her flight, plaintiff sent her nephew ahead to the departure gate, and departed before any assistance was provided. She claims that she ran a considerable distance to the gate. While she was running, carrying all of her luggage, she collapsed against a wall and fell to the floor. She was able to pick herself up, continue to the departure gate, and make her flight. She claims that she experienced physical injury as a result of her fall, including exacerbation of her pre-existing back injury and new injuries to her arms, hips, and legs. In

addition, she claims emotional distress and other damages.

### III. Argument and Analysis

■ Delta proposes three theories for summary judgment, all of which are without merit. First, Delta would have the Court grant summary judgment on the negligence claim, arguing that even under the comparative fault system followed in Tennessee and Texas, no reasonable jury could find for the plaintiff. The granting of summary judgment requires that there be no genuine issue of material fact and also that the movant be entitled to judgment as a matter of law. In order to grant this particular motion, the Court would have to determine that no reasonable jury would find Delta more than half at fault. The Court declines to do so.

■ Second, Delta claims that there was no enforceable contract entered into by itself and the plaintiff. The Court does not agree that this issue is appropriate for summary judgment. Taking the facts in the light most favorable to the nonmoving party, here the plaintiff, it is clear that a reasonable jury could find either that a contract existed between the plaintiff and Delta or that a contract existed between Mrs. Long and Delta to which the plaintiff was a third party beneficiary. Without delving deeply into the complexities of the issue, the Court disagrees with Delta's argument and declines to grant summary judgment on that basis.

The most difficult of Delta's arguments is that the contract and negligence claims of the plaintiff are preempted by federal legislation, namely the Federal Aviation Act ("FAA") and the Airline Deregulation Act ("ADA"). Indeed, a great deal of litigation has ensued over just this issue. The Federal Aviation Act of 1958 contained a "savings clause" disclaiming federal preemption: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. As the Supreme Court noted in Morales v. TWA, 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157, 164 (1992), "[t]o ensure that the States would not undo federal deregulation with regulation of their own," Congress included in the Airline Deregulation Act of 1978 a preemption clause which undid the savings clause in the FAA: "[N]o State .... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...." 49 U.S.C.App. § 1305(a)(1). Subsequently, Congress reworded the section to its current version: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, service of an air carrier...." 49 U.S.C.A. § 41713(b)(1) (1995 Revision Pamphlet).

The upshot of the ADA's preemption clause has been a confusion in the case law as to the exact extent of the preemption. Both parties have cited the Court to a number of cases, including the state case of *Knopp v. American Airlines, Inc.*, No. 01–A–01–CV00301, 1994 WL 687004 (Tenn.Ct.App. Dec. 9, 1994). *Knopp* gives a good explication of the preemption argument, and the facts of *Knopp* are quite analogous to those in the case at bar. In *Knopp*, the Tennessee Court of Appeals discussed a number of cases interpreting the thorny preemption issue of the FAA and ADA: *Howard v. Northwest Airlines, Inc.*, 793 F.Supp. 129, 132 (S.D.Tex.1992) (common law action for negligent failure to meet and assist elderly passenger preempted); *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11, 12 (5th Cir.1989) (action for wrongful exclusion from flight preempted); *Von Anhalt v. Delta Air Lines, Inc.*, 735 F.Supp. 1030, 1031 (S.D.Fla.1990) (action for wrongful ejection from flight preempted); *West v. Northwest Airlines, Inc.*, 923 F.2d 657, 660–61 (9th Cir.1990) (action for wrongful failure to allow boarding not preempted); *Miller v. Northwest Airlines*, 253 N.J.Super. 618, 602 A.2d 785, 789 (N.J.Super.Ct.App.Div.1992) (action for false arrest and intentional infliction of emotional distress not preempted); *Williams v. Express Airlines I, Inc.*, 825 F.Supp. 831, 833 (W.D.Tenn.1993) (action by handicapped passenger for false imprisonment by refusing boarding preempted); *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318, 322

(E.D.Mich.1993) (action for injury caused by negligently stored baggage not preempted); *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350, 356 (5th Cir.1993) (action for negligence related to overhead stowage of a case of rum preempted). The *Knopp* court went on to cite other cases, but this list of citations illustrates the confusion of courts about what is and is not preempted by federal law. The *Knopp* court concluded that "neither the common law of due care in the operation of an electric passenger cart nor that of performing an agreement to provide a wheelchair has been preempted by federal statute or regulation." *Knopp, supra,* at *6. This Court reaches the same conclusion, but because *Knopp* is a state court case interpreting a federal preemption issue, this Court is not bound by it. Rather, this Court looks to the case of *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), for guidance.

■ The *Wolens* case arose when passengers complained of unilateral modification of American's frequent flier program that devalued their accrued mileage. The plaintiffs brought both state common law breach of contract actions and statutory claims under the Illinois Consumer Fraud and Deceptive Business Practices Act. The common law claims were held not preempted, but the statutory claims were preempted by the federal statutory scheme. *Id.* at ——, 115 S.Ct. at 820. The majority opinion, authored by Justice Ginsburg and joined by Justices Rehnquist, Kennedy, Souter, and Breyer, stated: "We hold that the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." *Id.* Justice Stevens, concurring in part and dissenting in part, agreed with the holding as to the non-preemption of the contract claim, but would also have allowed the state statutory action to stand, because the Illinois Consumer Fraud and Deceptive Business Practices Act was merely a codification of common law tort and contract principles. *Id.* at —— ——, 115 S.Ct. at 827–28 (Stevens, J., concurring in part and dissenting in part). On the other end of the spectrum, Justice O'Connor, in an opinion joined by Justice Thomas in all parts here relevant, would interpret the preemption clause even more broadly than the majority, preempting even the state contract law claims. *Id.* at ——, 115 S.Ct. at 828 (O'Connor, J., concurring in part and dissenting in part). Justice Scalia did not participate in the decision of the case. Therefore, the Supreme Court actually decided one of the issues before this Court: whether a state breach of contract action is preempted by the ADA. The Court, with at least six Justices concurring, held that such an action was not preempted. Therefore, Delta's motion for summary judgment will be **DENIED** as to the contract claim.

■ The more difficult issue is the negligence claim. As noted *supra,* courts have split on preemption of various negligence actions. Although *Wolens* did not actually decide whether state common law negligence actions would be preempted by the ADA, dicta abound in each of this case's three opinions. In fact, the issue was brought out in oral argument, as the majority noted in a footnote:

> The preceding subsection ... requires an air carrier to have insurance, in an amount prescribed by the DOT, to cover claims for personal injuries and property losses "resulting from the operation or maintenance of aircraft." *See* Brief for United States as Amicus Curiae 19–20, and n. 12. American does not urge that the ADA preempts personal injury claims relating to airline operations. *See* Tr. of Oral Arg. 4 (acknowledgment by counsel for petitioner that "safety claims," for example, a negligence claim arising out of a plane crash, "would generally not be preempted"); Brief for United States as Amicus Curiae 20, N.12 ("It is ... unlikely that Section 1305(a)(1) preempts safety-related personal-injury claims relating to airline operations.").

*Id.* at —— n. 7, 115 S.Ct. at 825 n. 7. The majority later noted:

> Justice Stevens reads our *Morales* decision to demand only minimal preemption; in contrast, Justice O'Connor reads the same case to mandate total preemption....

Justice O'Connor's "all is preempted" position leaves room for personal injury claims, but only by classifying them as matters not "relating to [air carrier] ... services."

*Id.* at —— —— & n. 9, 115 S.Ct. at 826–27 & n. 9.

Justice Stevens wrote:

In my opinion, private tort actions based on common-law negligence or fraud, or on a statutory prohibition against fraud, are not pre-empted....

. . . .

I would analogize the Consumer Fraud Act to a codification of common-law negligence rules. Under ordinary tort principles, every person has a duty to exercise reasonable care toward all other persons with whom he comes into contact. Presumably, if an airline were negligent in a way that somehow affected its rates, routes, or services, and the victim of the airline's negligence were to sue in state court, the majority would not hold all common-law negligence rules to be pre-empted by the ADA. Like contract principles, the standard of ordinary care is a general background rule against which all individuals order their affairs. Surely Congress did not intend to give airlines free rein to commit negligent acts subject only to the supervision of the Department of Transportation, any more than it meant to allow airlines to breach contracts with impunity.

*Id.* at —— ——, 115 S.Ct. at 827–28 (Stevens, J., concurring in part and dissenting in part) (footnote and citations omitted).

Justice O'Connor's much harsher application of preemption, as noted above, would still leave room for personal injury claims:

As the Court recognizes, my view of *Morales* does not mean that personal injury claims against airlines are always preempted. Many cases decided since *Morales* have allowed personal injury claims to proceed, even though none has said that a State is not "enforcing" its "law" when it imposes tort liability on an airline. In those cases, courts have found the particular tort claims at issue not to "relate" to airline "services,"....

*Id.* at ——, 115 S.Ct. at 830 (O'Connor, J., concurring in part and dissenting in part)

(citation omitted). As previously noted, Justice Thomas joined in this part of Justice O'Connor's opinion.

From an analysis of the dicta in *Wolens,* this Court can reach but one conclusion, that the Supreme Court does not interpret the ADA preemption clause to extend to personal injury suits against air carriers. Even Justice O'Connor, who espouses the broadest interpretation of the preemption clause, would allow such suits to continue on the theory that such safety concerns do not "relate" to provision of "services" by carriers. This Court is also persuaded by the logic of Justice Stevens' opinion that Congress could not have intended either to leave passengers injured through airline negligence without a remedy or to turn the Department of Transportation into a forum for adjudication of personal injury claims. The defendant's motion for summary judgment will therefore be **DENIED** as to the negligence claim as well.

■ Having decided that neither the negligence claim nor the breach of contract claim is preempted by federal law, the Court must decide which state's common law is to be applied. Neither party has addressed the issue carefully in the briefs, as the preemption issue has to this point been of primary concern. A threshold issue exists as to which state's substantive law governs where, as here, the Court's jurisdiction is based upon the diversity of citizenship. In determining the applicable substantive law in diversity actions, a federal court must look to the conflict of laws rules of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Monette v. AM-7-7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991); *Mackey v. Judy's Foods, Inc.,* 867 F.2d 325, 327 (6th Cir.1989). Because Tennessee is the forum state in this case, the Court will apply the Tennessee conflict of laws rules.

■ A preliminary issue in deciding which state's law applies is whether an actual conflict of law exists. *Hataway v. McKinley,* 830 S.W.2d 53, 55 (Tenn.1992). In this case, the Court must determine whether a conflict exists between the law of Tennessee and the law of Texas with respect to comparative fault principles, contract principles, or dam-

ages to which the plaintiff might be entitled. The Court finds that such a conflict does exist as to the negligence claim. For reasons to be explained, the Court decides that Tennessee law will govern both claims.

In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), the Tennessee Supreme Court adopted the so-called "49 percent rule" form of comparative fault, wherein the plaintiff in a negligence suit may recover damages so long as her fault is less than that of the defendant. *Id.* at 57. Texas has adopted comparative fault legislatively. Tex.Civ. Prac. & Rem.Code Ann. § 33.001 (West 1995). Section 33.001(a) reads as follows: "In an action to recover damages for negligence resulting in personal injury, property damage, or death or an action for products liability grounded in negligence, a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent." *Id.* Thus, in an accident in which plaintiff and defendant were equally at fault, the plaintiff could recover in Texas, but not in Tennessee.

■ Having decided that there exists a conflict between the laws of Texas and Tennessee, the Court must decide which state's laws to employ in deciding the case. Tennessee has abandoned the doctrine of *lex loci delicti* in favor of the "most significant relationship" approach under the, *Restatement (Second) of the Conflict of Laws* §§ 6, 145, 146, and 175 (1971). *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn.1992). Under this approach, the law of the state where the personal injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, another state has a more significant relationship to the occurrence and parties *Restatement (Second) of Conflict of Laws* § 146 (1971). To determine which state has the most significant relationship, a Court considers the following factors:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in determination and application of the law to be applied.

*Id.* § 6. Contacts to be taken into account in applying the above factors include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145.

On most of the above factors, it makes little or no difference which of the two states' law is applied. However, the factors which do weigh one way or the other favor application of Tennessee law. Although the injury undisputedly occurred in Texas, the remaining factors in § 145 are either ambivalent or point to Tennessee. The record does not reflect where the Delta agent was located when he took the plaintiff's reservation on the toll-free line and agreed to provide assistance with ground transportation, but the plaintiff's sister was sitting in Tennessee. Thus one may conclude that the relationship between the parties centered in Tennessee. The domicile of the plaintiff, her sister, and her nephew is Tennessee, and although Delta is incorporated under the laws of Delaware, it maintains a registered agent for service of process in Tennessee. Its place of business could fairly be said to exist in all states and foreign countries where it provides service. The place where the conduct causing the injury occurred is likewise unclear. It is not clear whether the agent agreeing to provide assistance ever communicated to the Delta employees in Texas that plaintiff would require ground assistance, for example. Possibly, factors may have arisen in Texas that caused assistance to be unavailable at the instant plaintiff deplaned. At any rate, the factors in § 145 weigh in favor of Tennessee.

Turning to the factors listed in § 6, these tests also weigh in favor of Tennessee. Either a rule of *lex loci* or of application of the injured plaintiff's home state's laws would

serve the interests of uniformity, the needs of interstate systems, or the relevant policies of Tennessee. Also, in a case such as this, where the defendant maintains business operations nationwide, either rule subjects the defendant to the substantive legal standards of all of the states. As to policies of the states, both Texas and Tennessee desire fair compensation of their plaintiff citizens, and both desire fair process for their citizen defendants. However, neither party to this suit is a resident or domiciliary of Texas. Delta, although it does business in Texas, is incorporated in Delaware. There are no Texas defendants whose rights Texas would wish to protect. This consideration tips the scale to application of the law of Tennessee.

It would be tempting to adopt a *lex loci* rule here, justifying the choice with § 6(f) (certainty, predictability and uniformity) and § 145(a) (the place where the injury occurred). However, where would that leave the law but back in the days of *lex loci?* Given that the Tennessee Supreme Court adopted the new "most significant relationship" test in discarding *lex loci,* it is clear that this simple consideration should not override all others. If that were so, *Hataway* would never have been decided as it was. Although the fact that the accident occurred in Texas is significant, the weight of the other factors to be considered causes this Court to determine that the law of the State of Tennessee will be applied as to the negligence claim.

The conflict of law rules for the contract claim are not identical to those governing tort claims. According to *Tennessee Jurisprudence,*

> Tennessee follows the general rule that the validity of a contract and the substantive rights of the parties to it are to be governed by the law which the parties intended. In the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into.

*7 Tenn.Jur., Contracts* § 56 (Michie 1983) (citing *Boatland, Inc. v. Brunswick Corp.,* 558 F.2d 818 (6th Cir.1977)); *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665, 668–69 (1948).

It is undisputed that Mrs. Long was in Tennessee when she placed the call to Delta's reservation service. There is nothing in the record tending to show any intention on the part of either party that the contract should be interpreted by the law of any particular state. Therefore, according to the choice of law rule of Tennessee, Tennessee law will govern litigation over the contract.

An appropriate order will enter.

### · ORDER

In accordance with the accompanying memorandum, it is hereby **ORDERED** that:

(1) The motion of defendant Delta Air Lines, Inc. for summary judgment (Court File No. 10) is **DENIED**;

(2) The law of the State of Tennessee will govern both the negligence claim and the contract claim of the plaintiff Inez Jean Seals.