PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MCCALL-THOMAS ENGINEERING
COMPANY, INCORPORATED,
Plaintiff-Appellant,

v.

No. 95-1920

FEDERAL EXPRESS CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Charles E. Simons, Jr., Senior District Judge.
(CA-93-850-5-6)

Argued: February 1, 1996

Decided: April 8, 1996

Before HALL and ERVIN, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Hall and Judge Blake joined.

_____

**COUNSEL**

**ARGUED:** Thomas Braxton Bryant, III, BRYANT, FANNING &
SHULER, Orangeburg, South Carolina, for Appellant. Cynthia Joyce
Collins, FEDERAL EXPRESS CORPORATION, Memphis, Tennes-
see, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Appellant McCall-Thomas Engineering Co., Inc., engaged appellee Federal Express Corporation to deliver a shipment C.O.D. and instructed the carrier to collect a cashier's check. The cashier's check Federal Express returned to McCall-Thomas turned out to be fraudulent. In McCall-Thomas's suit to recover the amount of the bogus check, the district court granted summary judgment in favor of Federal Express on the ground that Federal Express fully performed under the terms of the contract. Finding no error in the decision below, we affirm.

I.

McCall-Thomas is a South Carolina company that sells computers and computer equipment. In February, 1993, it accepted an order for twenty computers from Medicomp Medical Supplies, which was in fact a sham operation. McCall-Thomas contracted with Federal Express to ship the computers C.O.D. to Medicomp. By way of Federal Express's standard C.O.D. Airbill, a preprinted form, McCall-Thomas instructed Federal Express to collect a cashier's check in the amount of $84,464.55. The Airbill directed delivery to Ron Stevens, Medicomp Medical Supplies, 1250 Long Beach Blvd., Los Angeles, CA, 90021.

The face of the Airbill specifically incorporated the terms printed on the back of the form, as well as the terms of a separate publication: "Use of this airbill constitutes your agreement to the service conditions in our current Service Guide available upon request. SEE BACK OF SENDER'S COPY OF THIS AIRBILL FOR INFORMATION." The back of the Airbill included the following terms:

2

AGREEMENT TO TERMS

> By giving us your package to deliver, you agree to all the terms on this Airbill and in our current Service Guide, which is available on request. If there is a conflict between the current Service Guide and this Airbill, the Service Guide will control. No one is authorized to alter or modify the terms of our Agreement.

C.O.D. SERVICE/C.O.D. AMOUNT

> C.O.D. Service consists of our carriage of goods to your recipient, collection of a check or money order issued by or on behalf of your recipient made payable to you, and return delivery of the check or money order to you. . . . All checks and money orders are collected at your risk, including risk of non-payment and forgery. . . .

The Service Guide contained a similar provision relating to the C.O.D. Service, and further provided that "Performance of the C.O.D. Service will not constitute us as the shipper's agent for any purpose, including, but not limited to, completion of the sale of the goods by the shipper to the recipient."

On Saturday, February 6, and again on Monday, February 8, Federal Express unsuccessfully attempted to deliver the computers. The building located at 1250 Long Beach Blvd. was an office complex surrounded by a locked gate; entry was to be obtained by calling a specific suite number. The Airbill did not list a suite number, and the office complex directory included no listing for Medicomp or Ron Stevens. Someone apparently called Federal Express looking for the computers later that day, so Federal Express again tried to deliver. The carrier, Marc Wilson, met someone outside the office complex's locked gate; this person identified himself as T. Johnson and said he was expecting the shipment. He presented a cashier's check in the amount of $85,000, drawn on Pacific Overseas Bank, Port Vila, Vanuatu (in the Fiji Islands). After attempting to cash the check, McCall-Thomas learned that the check was bogus and the bank non-existent.

3

Federal Express denied McCall-Thomas's claim for reimbursement based on the waiver printed on the Airbill. McCall-Thomas filed suit in the Court of Common Pleas of Orangeburg County, South Carolina, on March 11, 1993. Federal Express removed to the district court based on federal question jurisdiction,* and on March 29, 1995, the district court granted summary judgment in favor of Federal Express. The court concluded that "Federal Express fully complied with its contractual obligations by collecting a cashier's check in an amount sufficient to cover the specified C.O.D. Amount." McCall-Thomas timely filed its notice of appeal.

II.

Summary judgments are reviewed de novo on appeal. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). Summary judgment is appropriate in cases in which "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Both parties agree that forms such as Federal Express's Airbill may constitute the contract between the shipper and the carrier. See Southern Pac. Transp. Co. v. Commercial Metals Co. , 456 U.S. 336, 342-43 (1982). McCall-Thomas argues that Federal Express breached the contract by collecting an invalid cashier's check and failing to verify the check in light of suspicious circumstances. We do not believe the contract imposes any such duty. See, e.g., Caporicci Footwear, Ltd. v. Federal Express Corp, 894 F. Supp. 258, 261 (E.D. Va. 1995) ("To impose such a requirement [of investigating suspicious circumstances surrounding delivery] would make Federal Express plaintiff's agent for purpose of completing the transaction between it and the recipient. The Service Guide clearly states that no such agency relationship exists.").

_____

*Claims involving shipments in interstate commerce by air carriers are governed by federal law. See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great W. Airlines, Inc., 767 F.2d 425, 427 (8th Cir. 1985); First Pa. Bank v. Eastern Airlines, Inc., 731 F.2d 1113, 1115 (3d Cir. 1984).

Federal Express's only duty under this contract was to collect a facially valid cashier's check. See, e.g., National Diamond Syndicate, Inc. v. United Parcel Serv., Inc., 897 F.2d 253, 264 (7th Cir. 1990) (where it was established that carrier was acting as shipper's agent in collecting a C.O.D. payment, carrier did not breach its duty of reasonable care by not verifying facially valid cashier's checks in the absence of suspicious circumstances); Comark, Inc. v. United Parcel Serv., Inc., 701 F. Supp. 641 (N.D. Ill. 1988) (in case decided on other grounds, court observed that carrier which accepted what appeared to be a cashier's check, later determined to be forged, would be within its authority; "to hold otherwise would call on UPS drivers to be moonlighting law students, skilled in the arcane mysteries of the UCC"). The check in this case appeared to fit the definition of a cashier's check: its drawer was a bank and the check was drawn upon the bank's own account. See Ross v. Peck Iron & Metal Co., 264 F.2d 262, 269 (4th Cir. 1959).

McCall-Thomas assumed all risk of fraud in connection with Federal Express's C.O.D. service. The Restatement of Agency's rule that "[u]nless otherwise agreed, an agent employed to collect . . . has a duty of using reasonable care and skill," Restatement 2d of Agency § 426 (1957), does not apply because Federal Express expressly declined to act as McCall-Thomas's agent for the purpose of this C.O.D. delivery. See Littleton Stamp & Coin Co. v. Delta Airlines, Inc., 778 F.2d 53, 57 (1st Cir. 1985) ("A shipper which decides to gamble by accepting other than cash should not be able to simply shift the increased risk to the carrier--particularly if the evidence shows that the carrier specifically declined such a burden."). Even if some duty were found to exist, Federal Express satisfied that duty by collecting a facially valid cashier's check. We do not believe that the nonexistence of the bank on which the cashier's check was supposedly drawn and the fact that the check was for greater than the amount specified by McCall-Thomas compel a different conclusion.

Federal Express's unambiguous contractual provisions are to be given effect. Here, as in the usual case, the shipper was in a far better position to verify the honesty and creditworthiness of its customers; if questions had arisen, the shipper could have insisted on advance or cash payment. Federal Express was contractually obligated to collect a facially valid and authorized form of payment, but not to take inde-

5

pendent steps to verify the instrument. Federal Express performed its end of the bargain, and is not liable for losses that McCall-Thomas sustained because of the Medicomp fraud.

III.

Because Federal Express fully performed under the terms of its C.O.D. contract with McCall-Thomas, we affirm the district court's entry of summary judgment in favor of Federal Express.

AFFIRMED