## In re AIR TRANSPORTATION EXCISE TAX LITIGATION.

### No. 3–96 Civ. 453.

United States District Court,
D. Minnesota.

Feb. 22, 1999.

**1134**

Chestnut & Brooks, P.A. by Karl L. Cambronne, and Plunkett, Schwartz, Peterson, P.A. by Hugh V. Plunkett III & Robert K. Shelquist, Minneapolis, MN, for plaintiffs.

Faegre & Benson LLP by John D. French, Minneapolis, MN, and Morgenstein & Jubelirer, LLP by Eliot S. Jubelirer, San Francisco, CA, for defendant.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on the motion of Defendant Federal Express Corporation ("FedEx") for a judgment on the pleadings, FED.R.CIV.P. 12(c), or, alternatively, for summary judgment, FED. R.CIV.P. 56. For the reasons stated below, the Court will treat the motion as one for summary judgment and grant the motion. Also before the Court is Plaintiffs' motion to strike, as premature, the affidavits of two experts offered by FedEx in support of its motion. Since the Court need not consider these affidavits to resolve the dispositive motion before it, the Court will grant Plaintiffs' motion to strike.

## BACKGROUND

In these consolidated cases,[1] Plaintiffs purport to represent a class of FedEx customers who shipped packages via Fe-

---

1. This order also disposes of two related actions, No. 3–96 Civ. 699 and No. 3–96 Civ. 710.

dEx during the periods from January 1, 1996 through August 26, 1996, and from January 1, 1997 through February 28, 1997.[2] · During those periods, the 6.25 percent federal excise tax on the transportation of property by air was not in effect. *See* 26 U.S.C. § 4271. The gravamen of Plaintiffs' claims is that FedEx, having represented in its contract documents that its rates included the excise tax, wrongfully enjoyed a windfall by continuing to collect from Plaintiffs an amount equal to the expired tax. Plaintiffs assert four separate claims regarding this allegedly wrongful conduct.

Plaintiffs' primary count is for breach of contract. Plaintiffs' theory is that, since FedEx did not reduce its rates to reflect the expired tax obligation, FedEx effectively raised its rates by an amount equal to the expired tax. This effective rate increase, Plaintiffs contend, constituted a breach of FedEx's stated obligation to notify its customers in writing of any rate increases.

Plaintiffs also bring claims for unjust enrichment, money had and received, and conversion. Under their unjust enrichment theory, Plaintiffs contend that FedEx's collection of an amount equal to the tax was "unwarranted and unjustified" to the detriment of Plaintiffs. For their money had and received claim, Plaintiffs charge that FedEx's collection of an amount equal to the tax resulted in a deprivation of Plaintiffs' use of money which otherwise rightfully belonged to them. Finally, for their conversion claim, Plaintiffs contend that FedEx's collection of an amount equal to the tax deprived Plaintiffs of their rightful property interest in the monies collected.

In response, FedEx argues first that Plaintiffs are really seeking a tax refund, and therefore all their claims are barred by the Internal Revenue Code (the "Code"). 26 U.S.C. § 7422. Code section 7422 provides that a taxpayer may not bring a tax refund suit until she first makes a claim with the Internal Revenue Service ("IRS"), and further that if the taxpayer loses before the IRS she may only bring her tax refund suit against the United States. Since Plaintiffs· have not filed a refund claim with the IRS, and further since FedEx is not a proper defendant to a tax refund suit in any case, FedEx argues that the action should· be dismissed.

FedEx also argues that Plaintiffs' claims are preempted by the Airline Deregulation Act of 1978 ("ADA"), which prohibits a state from enacting or enforcing any law "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). FedEx argues that allowing Plaintiffs' state law claims to proceed would constitute the "enforcement of state laws"—namely Minnesota's governing law of contracts, unjust enrichment, money had and received, and conversion—"relating to" FedEx's rates, and therefore is prohibited by the ADA.

Finally, if Plaintiffs' claims are not prohibited by either the Code or the ADA, FedEx argues that Plaintiffs' claims fail as a matter of Minnesota state law.

## STANDARD OF REVIEW

A court will grant a motion for judgment on the pleadings if, viewing the allegations in a light most favorable to the non-movants, it appears beyond doubt that the non-movants can prove no set of facts entitling them to relief. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). If matters outside the pleadings are presented to and not excluded by the court, the Rule 12(c) motion is treated as a summary judgment motion under Rule 56. *Inland Container Corp. v. Continental Ins. Co.,* 726 F.2d 400, 401 (8th Cir.1984). Summary judgment is proper if the pleadings and additional materials properly before the court show that there is no genuine issue of material fact, such that the

---

**2.** Plaintiffs have not moved for class certification and the Court need not consider any class issues to resolve FedEx's motion.

moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The parties have submitted volumes of additional materials in support of their positions. The bulk of these materials address who "bore the burden" of the tax. As will become apparent, the Court finds it unnecessary to refer to these materials to reach its conclusion that FedEx is entitled to prevail, because the Court finds that whoever "bore the burden" of the tax is legally irrelevant to the resolution of these claims. But since the Court does consider certain other matters contained in the submissions, the Court will treat the motion as one for summary judgment nonetheless.

## DISCUSSION

### I. *Tax Code Preemption*

The relevant parts of Code section 7422 provide as follows:

(a) No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]....

(f)(1) A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States....

26 U.S.C. § 7422(a).

FedEx argues that this action is really a tax refund lawsuit against the wrong party, because section 7422 only allows tax refund suits to be brought against the United States, and then only following an unsuccessful claim filed with the IRS. In support of its argument, FedEx cites a number of cases in which travelers sued passenger airlines to recover a lapsed 10–percent ticket tax. *Brennan v. Southwest Airlines Co.,* No 96 Civ. 1841 (N.D.Cal.

Sept 6, 1996), *aff'd,* 134 F.3d 1405 (9th Cir.1998), *amended without substantive change,* 140 F.3d 849 (9th Cir.1998); *Sigmon v. Southwest Airlines Co.,* No. 3–96 Civ. 393 (N.D.Tex. May 23, 1996), *aff'd,* 110 F.3d 1200 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 370, 139 L.Ed.2d 268 (1997); *Kaucky v. Southwest Airlines Co.,* 1996 WL 267875 (N.D.Ill. May 17, 1996), *aff'd,* 109 F.3d 349 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 368, 139 L.Ed.2d 286 (1997) (collectively, the "passenger airline" cases). In each passenger airline case, the defendant airline collected a 10–percent excise tax from passengers who bought tickets while the tax was still in effect, but for travel after the tax expired. The passengers sued the airline to recover the tax. In each case, the district court dismissed, and the reviewing court affirmed, because the passengers' claims were preempted by section 7422.

Those cases are distinguishable in two important ways. First, the passenger airline courts all relied on the fact that the airlines had turned over the erroneously collected funds to the IRS. *Brennan,* 134 F.3d at 1408 (noting that defendants "apparently did not pocket any of the money for their own benefit"); *Sigmon,* 110 F.3d at 1204 (noting that the airline did not "pocket the money for itself"); *Kaucky,* 109 F.3d at 350–51 (assuming that the airline "remitted the money it collected" to the IRS). Here, FedEx admits that it never paid anything to the IRS when the tax expired.

Second, the refund amount at issue in the passenger airline cases was readily ascertainable, because each ticket receipt showed the 10–percent tax as a separate line item. Here, Plaintiffs have no way of knowing how much of their shipping charges constituted an amount equal to the expired tax: all that Plaintiffs know is that FedEx represented to them that the rates Plaintiffs were paying "include[d] the excise tax required by the federal government on the transportation of property by air."[3]

---

**3.** Most FedEx packages travel by both air and

ground transportation, but FedEx does not

For these reasons, it would be futile for Plaintiffs here to seek a refund from the IRS, because the IRS never received any money from FedEx that it could refund to them, and further because neither the Plaintiffs nor the IRS have any idea what the amount of refund should be (if any). The Court finds the reasoning of the passenger airline cases—that the plaintiffs there had a simple and workable prescribed remedy before the IRS—inapplicable to the undisputed facts shown here.

█ The Court concludes that section 7422 is limited in its application to instances in which a taxpayer—one subject to an internal revenue tax—seeks to recover a purported and paid "tax" that was actually "assessed" or "collected" on behalf of the government *and that was actually paid to the government.* The use of the term "recover" in the statute carries the implicit assumption that the funds are, in fact, "recoverable"—that is, that the funds are either already in government coffers or, at least, are within the government's easy reach. The statute does not preclude actions where, as here, a person who was not subject to an internal revenue tax seeks to recover an amount alleged to have been collected by someone else, in breach of a contract between them or by some other unlawful means, where the collector never remitted that amount to the government.

One early interpretation of section 7422 is instructive. *DuPont Glore Forgan Inc. v. American Tel. & Tel. Co.,* 428 F.Supp. 1297 (S.D.N.Y.1977). In *DuPont,* telephone customers sought to recover a communications excise tax from their phone company. Although the court concluded that section 7422 precluded plaintiffs' claims, it expressly relied on the fact that the phone company, acting as a "collecting agent," had "paid the taxes over to the government." *Id.* at 1303 n. 21. The

court also likened the protections of section 7422 to the common law rule that an agent who receives money by mistake is not liable to the payor, "if [the agent] has paid the money over to his principal." *Id.* Thus, actual payment was as important to the *Dupont* court as it is to this one.

This Court's conclusion is also supported by what sparse legislative history exists concerning the passage of section 7422. That history reveals that the motivation behind section 7422 was to abolish the previously-accepted practice of allowing a taxpayer to bring a tax refund suit directly against the IRS district director "to whom the tax was paid." *See* S.Rep. No. 1625 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3676, 3681. In those instances, the United States would always reimburse the district director if the taxpayer prevailed. *Id.* Congress noted that the practice presented problems: because district directors would often leave or die in the middle of the litigation, plaintiffs were often barred by statutes of limitation from bringing a second suit. *Id.* Moreover, the practice encouraged taxpayers to forum-shop for a perceived favorable judicial district in which to sue. *Id.,* 1966 U.S.C.C.A.N. at 3682.

Because of these problems, Congress passed section 7422 to provide that "suits for refund may be maintained only against the United States and not an officer or employee of the United States." *Id.* In abolishing the old practice, the reporting committee specifically noted that it was abolishing the right of action against district directors "only because other adequate remedies ... are already available." *Id.* Thus, Congress did not intend to curtail taxpayer remedies, only rechannel them. It did not intend to restrict the remedies available to a non-taxpayer party

delineate separate rate components for the air and ground portions of a package's journey. Since it would be difficult for FedEx (or the IRS) to determine the air portion (and therefore the taxable portion) of a given shipping rate for a given package, the IRS permits FedEx to remit the excise tax based on a

complex formula that attempts to approximate the air portion of FedEx shipments on an aggregate basis. For this reason, and unlike the passenger airlines cases, FedEx does not calculate and provide to customers a line-item amount for federal excise tax liability on individual shipments.

who alleges that a non-governmental party wrongfully took money from him.

FedEx argues that the language of section 7422 is broad enough to preempt Plaintiffs' claims here. It notes that section 7422 addresses not only suits for recovery of an "internal revenue tax" wrongfully collected, but also suits for recovery of "any *sum* alleged to have been excessive or in any manner wrongfully collected." 26 U.S.C. § 7422(a) (emphasis added). FedEx argues that, even though there is no "internal revenue tax" for Plaintiffs to recover here (because no such tax existed during the relevant time), Plaintiffs are still seeking a "sum" and therefore must follow the procedures prescribed by section 7422.

The Court declines to read the word "sum" so broadly. To do so would require anyone who pays an allegedly excessive or wrongful "sum" to anyone else, for any reason, to first seek to recover that sum from the IRS, and then the United States—even though the government would have no knowledge of, interest in, or nexus to the sum alleged to have been excessive or wrongful.

The Court does not believe its conclusion, that Plaintiffs' action is not preempted by the Code, will upset "the harmony of our carefully structured system of tax litigation." *DuPont*, 428 F.Supp. at 1303–04. The Court simply declines to read section 7422 as requiring a person to go to the

IRS to recover an incalculable "tax" that was never due, assessed or paid. To require such a hopeless endeavor "would produce an absurd and unjust result which Congress could not have intended." *Clinton v. City of New York*, 524 U.S. 417, 118 S.Ct. 2091, 2098, 141 L.Ed.2d 393 (1998); *see also Rowley v. Yarnall*, 22 F.3d 190, 192 (8th Cir.1994) (declining to interpret statutes to produce an absurd result if "alternative interpretations consistent with the legislative purpose are available").[4] The Court holds that Plaintiffs' claims are not preempted by Code section 7422.[5]

## II. *ADA Preemption*

The ADA preemption statute provides in relevant part:

> [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier....

49 U.S.C. § 41713(b)(1).[6] Congress passed the ADA to deregulate the airline industry; it included this section "[t]o ensure that the States would not undo federal deregulation with regulation of their own...." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

FedEx argues that the ADA preempts Plaintiffs' claims. It argues that if the Court were to allow Plaintiffs' claims to

---

4. The Court notes that the facts here present a case analogous to Chief Judge Posner's "intermediate case" in *Kaucky*. *See Kaucky*, 109 F.3d at 352–53 (assuming in *dicta* that, if a collecting agent "pocketed the money it collected for the nonexistent tax rather than turning it over to the IRS," customers "would have a claim against [the collecting agent]").

5. FedEx cites only one precedent that supports its contention that, even in cases where the collector is alleged to have pocketed the tax, the Code nevertheless preempts Plaintiffs' claims. *Strategic Risk Management, Inc. v. Federal Express Corp.*, 174 Misc.2d 383, 665 N.Y.S.2d 799, 801 (N.Y.Sup.Ct.1997). The facts in *Strategic Risk* are on point with the facts here, and it appears to be the only opinion that addresses these issues in relation

to the air freight, rather than the airline passenger, excise tax. But the *Strategic Risk* court, in its wholesale adoption of the reasoning of the passenger airline cases, failed to recognize the factual distinctions discussed above. Notably, the *Strategic Risk* court favorably cited the *Kaucky* opinion, but failed to note that FedEx, unlike the *Kaucky* defendant, never paid any money over to the IRS once the tax expired—a circumstance which, in Chief Judge Posner's view, would have weighed *against* a finding of preemption. *Kaucky*, 109 F.3d at 352–53. This Court therefore respectfully declines to follow the tax preemption analysis in *Strategic Risk*.

6. Undisputedly, FedEx is an "air carrier" within the meaning of the statute.

proceed, the Court would necessarily be required to "enforce" state laws—namely, Minnesota's laws governing the contract, tort and equitable theories advanced by Plaintiffs. FedEx contends that enforcement of these laws necessarily makes them "related" to FedEx's prices, and hence the action should be dismissed.

In *American Airlines, Inc. v. Wolens*, the Supreme Court had occasion to consider the scope of the ADA preemption statute at issue here. 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Wolens was a participant in American Airline's frequent flyer program. When the airline modified that program in certain respects, Wolens alleged that the modifications constituted both a breach of contract under Illinois law and a violation of Illinois's consumer fraud statute. *Id.* at 224–25, 115 S.Ct. 817. The Supreme Court held that Wolens's consumer fraud claim was preempted by the ADA, but that his contract claim could proceed. *Id.* at 226, 115 S.Ct. 817.

Addressing the consumer fraud statute first, the *Wolens* Court noted that Illinois's consumer fraud laws were "prescriptive" in that they "control[led] the primary conduct of those falling within [their] governance." *Id.* at 227, 115 S.Ct. 817. The Court likened the consumer fraud laws to the state-promulgated airline advertising guidelines that the Court had previously ruled were preempted by the ADA in *Morales. Id.* (citing *Morales*, 504 U.S. at 392, 112 S.Ct. 2031). The Court concluded that the fraud laws served as a means to "guide and police" the airlines' behavior, and thus were the very type of "intrusive regulation" that the ADA sought to prohibit. *Id.* at 227–28, 115 S.Ct. 817.

But the *Wolens* Court rejected the airline's contention that the ADA prohibits "state law-based court adjudication of routine breach of contract claims." *Id.* at 232, 115 S.Ct. 817. The Court noted that respecting the remedies of contracting parties, premised upon their own "self-im-

posed undertakings," not only does not *interfere* with Congress's deregulatory mandate, but actually *promotes* it, because "[m]arket efficiency requires effective means to enforce private agreements." *Id.* at 228–30, 115 S.Ct. 817. The Court concluded that the ADA's preemption provision "allows room for court enforcement of contract terms set by the parties themselves." *Id.* at 222, 115 S.Ct. 817.

The Eighth Circuit has not yet had occasion to apply or expound on the Supreme Court's holding in *Wolens*, but other circuits have since struggled to draw the line that separates allowable state law claims from ADA-preempted ones. The Second Circuit has focused on the meaning of "related to" in the ADA preemption statute. *Abdu–Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 82–84 (2d Cir.1997). The court observed that " '[r]elated to' appears to be developing, to some degree, to mean whether state law actually 'interferes' with the purposes of the federal statute, in this case airline deregulation." *Id.* at 82. Borrowing from Supreme Court precedents interpreting the ERISA statutes, the court held that an airline arguing ADA preemption "bear[s] the burden of overcoming the initial presumption against preemption by establishing that enforcing the [state] laws would frustrate the purpose of the ADA." *Id.* at 83. The court concluded that enforcement of New York's age discrimination laws would not frustrate the purpose of the ADA, because "whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency." *Id.* at 84. The court thus held there was no ADA preemption. *Id.* at 86.[7]

Most recently, the Ninth Circuit sat *en banc* to address the reach of the ADA preemption statute. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir.1998). In *Charas*, the court was considering five consolidated cases in which passengers sued airlines, under both tort and contract theories, for injuries sus-

---

**7.** The Sixth Circuit has recently followed the Second Circuit's ADA preemption analysis.

*Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493 (6th Cir.1999).

tained during flights. *Id.* at 1261–62. The Ninth Circuit held that the ADA preempts "only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Id.* at 1261. The *en banc* court remanded the consolidated cases to the appellate panels, to determine in each case whether the lawsuit met that ADA preemption standard. *Id.* at 1266.[8]

Thus, while the line separating allowable state law claims from ADA-preempted ones remains fuzzy, the trend from these post-*Wolens* cases, and particularly the Ninth Circuit's decision in *Charas*, suggests to this Court that the line must be drawn between (1) laws which have the effect of interfering with the ADA's purpose of achieving economic deregulation of the airline industry (preempted), and (2) laws which bear too tenuous, remote or peripheral a relation to an airline's prices, routes or services to have an adverse effect on airline competition (not preempted). Such an interpretation is faithful to Congress's deregulatory intent while avoiding the "cavalier preemption" of a sovereign state's common law causes of action. *Id.* at 1264–65 (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

### A. Equitable and Tort Claims

■ With this interpretive framework in mind, the Court concludes that the ADA does not preempt any of Plaintiffs' equitable and tort claims. The law of unjust enrichment, money had and received, and conversion, unlike the airline advertising rules at issue in *Morales*, do not affirmatively prescribe (or proscribe) the airlines' conduct in a way that impedes competition or adversely impacts the economics of the airline industry. *Charas*, 160 F.3d at 1261. These laws have "nothing to do with the purpose of airline deregulation." *Id.* at 1263. They all provide, when the facts warrant it, for "remedies that already existed at common law," and they do not "significantly impact federal deregulation" in any articulable way. *Id.* at 1265. Further, enforcement of these laws would not "frustrate the purpose" of the ADA. *Abdu-Brisson,* 128 F.3d at 84.

Congress surely did not pass the ADA to give the airlines carte blanche to convert property or unjustly enrich themselves willy-nilly, immunized from state law consequences. And it could not have intended to require all complaints of such conduct to be channeled through the Department of Transportation ("DOT"), as FedEx contends. *See Wolens,* 513 U.S. at 232, 115 S.Ct. 817 (noting that when Congress "dismantled" the regulatory regime, it did not intend "to establish, simultaneously, a new administrative process for DOT adjudication of private ... disputes"). Accordingly, the Court holds that Plaintiffs' claims for unjust enrichment, money had and received, and conversion are not preempted by the ADA.

### B. Breach of Contract Claim

■ The Court need look no further than *Wolens* itself to conclude that Plaintiffs' breach of contract claim is not preempted by the ADA. There is no dispute that an express contract existed between FedEx and Plaintiffs. *See McCall-Thomas Eng'g Co. v. Federal Express Corp.,* 81 F.3d 28, 30–31 (4th Cir.1996) (holding that FedEx's airbill "constitute[s] the contract between the shipper and the carrier" and that FedEx's "unambiguous contractual provisions are to be given effect"). Further, the contract was "self-imposed" by the parties: FedEx drafted the shipping contracts and both parties voluntarily agreed to be bound by the contracts' terms.[9]

---

8. The Third Circuit has recently followed the Ninth Circuit's ADA preemption analysis. *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186 (3rd Cir.1998).

9. FedEx's argument that its contract terms were "externally imposed" by the Code and the IRS, distinguishing its contracts from the "self-imposed undertakings" that the Supreme Court enforced in *Wolens*, is meritless. During the relevant period, shipping customers had no tax obligation. FedEx thus had neither the obligation to collect a tax nor the

FedEx argues that the breach of contract action here is really a "disguised" tort claim. The *Wolens* court considered and rejected the very same argument. *Wolens*, 513 U.S. at 233, 115 S.Ct. 817 (rejecting airline's argument that plaintiff's breach of contract and fraud claims "differed only in their labels"). And, if Plaintiffs' breach of contract claim really *is* a disguised tort claim, then FedEx need not worry: a contract claim cannot survive simply because it might satisfy the requirements of a tort claim, or *vice versa*. Each of Plaintiffs' claims must stand or fall based upon the law governing *that claim* as applied to the undisputed facts relevant to *that claim*. Plaintiffs' breach of contract claim is not preempted by the ADA.[10]

### III. *Substantive Theories of Relief*

#### A. Breach of Contract

In Minnesota, a party breaches a contract when it fails to perform a contractual obligation. *Nguyen v. Control Data Corp.*, 401 N.W.2d 101, 105 (Minn.Ct.App. 1987). The interpretation of an unambiguous contract is a question for the court, not a jury. *Green Tree Acceptance, Inc. v. Wheeler*, 832 F.2d 116, 117 (8th Cir.1987). A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone. *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.*, 470 N.W.2d 118, 123 (Minn.1991). Plaintiffs correctly point out that, if there is an ambiguity in this contract, it should be construed against FedEx, because the contract is one of adhesion. *Lowry v. Kneeland*, 263 Minn. 537, 117 N.W.2d 207, 210

(Minn.1962) ("[I]f there is doubt as to [a contract's] meaning it must be construed most strongly against the one who chose the language in drafting the instrument.").

There is no dispute that a valid, express contract existed between Plaintiffs and FedEx. That contract consisted of the FedEx airbill and also, by reference, additional terms found in FedEx's service guide. The formation of the contract occurs when the customer deposits the package, thus indicating her acceptance of the terms contained in the airbill and service guide. Plaintiffs make two primary contractual allegations: (1) FedEx collected an amount equal to the expired tax and did not remit it to the government, and (2) by continuing to collect an amount equal to the tax, FedEx effectively raised its rates without providing Plaintiffs with promised written notice.

The first allegation is premised on two statements found in the contract documents. First, the FedEx airbill stated that "our basic rate includes a federal tax required by Internal Revenue Code Section 4271 on the air transportation portion of this service." Second, the FedEx service guide stated that "all rates ... include the excise tax required by the federal government on the transportation of property by air." FedEx admits that it did not remove this language from these documents during the periods in which the tax was not in effect.

The Court concludes that these statements are not actionable contract "obligations." When the tax was in effect, the

---

obligation to state in its shipping documents that its rates included a tax.

**10.** FedEx argues that the passenger airline cases require a finding of ADA preemption here on all counts. The Court disagrees. While the district courts in those cases cited ADA preemption as an alternative ground for dismissal of certain claims, the circuits avoided affirming on that basis. The Fifth and Ninth Circuits recognized the ADA preemption issue, but did not address it because of their conclusions on the tax preemption issue. *Sigmon*, 110 F.3d at 1204 n. 10; *Brennan*,

134 F.3d at 1409 n. 3. The Seventh Circuit did not even mention the lower court's alternative holding that the ADA preempted plaintiff's claims. *Kaucky*, 109 F.3d at 350–51. Also, each of the lower courts in the passenger airline cases relied on a Seventh Circuit opinion that is now of questionable precedential value, since it was decided before *Wolens*. See *Statland v. American Airlines, Inc.*, 998 F.2d 539, 541–42 (7th Cir.1993) (holding that plaintiff's supplemental state law claims, including a breach of contract claim, were preempted by the ADA).

statements served to notify the customer that FedEx was assuming the responsibility of paying any applicable federal tax on the air portion of the shipment. The statements effectively operated to relieve the customer of any obligation to separately pay the tax in addition to FedEx's fixed shipping rate.

But on their face, the statements do not oblige FedEx to reduce its rates to exclude the tax once it expired. Once the tax did expire—a matter of public record to anyone who cared—the language became mere surplusage. The customer still agreed to pay the stated rate, no matter what its make-up, and the erroneous notice had no bearing on the decision. Plaintiffs' contention that FedEx breached the contract by "collecting the excise tax" thus fails as a matter of law, whether FedEx was really collecting a tax or not. *See Strategic Risk Management, Inc. v. Federal Express Corp.,* 174 Misc.2d 383, 665 N.Y.S.2d 799, 802 (N.Y.Sup.Ct.1997) (holding that, since FedEx "did not separately break out and charge plaintiff for the lapsed excise tax, but rather for transporting packages with an all-inclusive charge, no breach of any contractual provision has been shown").

Plaintiffs' second allegation of breach, that the "collection" of the expired tax amounted to a rate increase without giving the promised written notice, is premised on the following language contained in FedEx's service guide:

> FedEx reserves the right, and only by authorization of its Senior Vice President of Marketing and Corporate Communications or successor positions, unilaterally, and from time to time, in writing, to modify, amend or supplement the rates, features of service, products and Service Conditions in this Service Guide *without* notice, but no other agent or employee of FedEx, nor any other person or party, is authorized to do so.

Affidavit in Opposition to Summary Judgment, Ex. 7 (emphasis added). Plaintiffs contend that this language obligated FedEx to provide customers with written notice of any rate modification. They argue that, by not reducing its rates when the excise tax expired, FedEx effectively raised its rates, triggering the notice requirement.

Plaintiffs cannot prevail on this argument because the contract unambiguously does not obligate FedEx to provide written notice to customers of a rate change; in fact, the contract unambiguously reserves to FedEx the right to change its rates *without* any notice to customers. Plaintiffs ask the Court to interpret the stated language as providing that "FedEx [will notify customers], in writing, [if it decides] to modify, amend or supplement the rates...." The contract says no such thing. It states, unambiguously, that FedEx "reserves the right ... to modify, amend or supplement the rates ... *without notice*...." The provision is "reasonably susceptible of only one interpretation," that FedEx was reserving its right to change rates and other contract terms without notice. *Green Tree Acceptance,* 832 F.2d at 118. FedEx never promised to notify Plaintiffs of any rate changes, so Plaintiffs' breach of contract claim therefore fails as a matter of law.[11]

---

**11.** In their briefs and supporting materials, the parties argue at length whether the expiration of the tax constituted an effective rate change at all. FedEx contends that since it paid the tax to the IRS, the tax was a cost that it bore, and any cost "savings" from the expiration of the tax inured to its benefit—just as it would benefit from negotiating a better deal for jet fuel or paper stock. Plaintiffs counter that they "bore the burden" of the tax, based upon the clear language in the Code, so that elimination of the tax served to eliminate one component of FedEx's rate, and obligated FedEx to reduce its rates accordingly. The Court need not resolve this argument because even if Plaintiffs bore the burden of the tax, FedEx's contract did not obligate it to change its rates, or provide notice of any rate increase.

## B. Unjust Enrichment & Money Had And Received

Plaintiffs also assert the equitable claims of unjust enrichment and money had and received. In Minnesota, parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms. *Sports & Travel Mktg., Inc. v. Chicago Cutlery Co.*, 811 F.Supp. 1372, 1378 (D.Minn.1993). Equitable relief cannot be granted where the rights of the parties are governed by a valid contract. *United States Fire Ins. Co. v. Minnesota State Zoological Board*, 307 N.W.2d 490, 497 (Minn.1981).

Plaintiffs have alleged, and FedEx does not deny, the existence of a valid express contract in this case. Plaintiffs' equitable claims concern the same subject matter addressed in their contract claim, so they must be dismissed. *Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn.Ct. App.1996) (dismissing unjust enrichment claim because "the rights of the parties were governed by valid contracts"); *Renn v. Wendt*, 185 Minn. 461, 241 N.W. 581, 581 (1932) (holding that "[a]n action for money had and received cannot be maintained where the rights of the litigants in the money or property are governed by a valid contract").

## C. Conversion

Plaintiffs also assert a common law claim of conversion. In Minnesota, the elements of conversion are (1) the plaintiff has a property interest, and (2) defendant deprives plaintiff of that property interest. *Lassen v. First Bank of Eden Prairie*, 514 N.W.2d 831, 838 (Minn.Ct. App.1994). A plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion. *Id.* Here, Plaintiffs claim that FedEx deprived them of their property interest in the money they paid to FedEx equal to the expired tax.

Plaintiffs cite to no case, and this Court cannot find one, that has allowed a contracting party to recover, in conversion, an amount paid to the other party, where the only alleged basis for recovery is that the payor later believes that the price he agreed upon was too high. Once Plaintiffs' agreed to pay the fixed rate stated in FedEx's service guide, and once it paid that rate, then it no longer had an enforceable interest in that money for which an action for conversion could lie. *Id.* As FedEx counsel noted at the hearing, if Plaintiff's conversion claim is valid here, then any party to a transaction who later believes he paid too much money would have a claim for conversion. The Court will therefore dismiss the conversion claim.

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, upon review of the files, motions and proceedings herein, it is hereby ORDERED that:

1. Plaintiffs' motion to strike expert testimony is GRANTED.

2. Defendant Federal Express Corporation's motion for judgment on the pleadings or, alternatively, for summary judgment, is treated as a motion for summary judgment and is GRANTED.

3. The clerk of court shall enter judgment, for this action as well as related actions No. 3–96 Civ. 699 and No. 3–96 Civ. 710, as follows:

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Plaintiffs' claims against Federal Express Corporation are dismissed in their entirety.