Beth **LEONARD**, on behalf of herself and all others similarly situated, Appellant,

v.

**NORTHWEST AIRLINES, INC.**, Respondent.

No. C0–99–948.

Court of Appeals of Minnesota.

Feb. 8, 2000.

Samuel D. Heins, Daniel E. Gustafson, Kristine M. Boylan, Heins Mills & Olson, P.L.C., Minneapolis, MN, Leonard B. Simon, Dennis Stewart, Joseph D. Daley, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Daniel A. Farber, Minneapolis, MN (of counsel), for appellant).

Thomas Tinkham, Michael J. Wahoske, Andre T.M. Hanson, Dorsey & Whitney LLP, Minneapolis, MN (for respondent).

Considered and decided by LANSING, Presiding Judge, WILLIS, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

The district court dismissed an airline ticket purchaser's breach-of-contract and unjust-enrichment claims as preempted by the Airline Deregulation Act (ADA) and awarded the airline attorneys' fees under Minnesota Rule of Civil Procedure 11. We agree that the ADA preempts the claims. But the ticket purchaser's argument that the claims are outside the scope of the ADA's preemption clause has a legal basis,

and we therefore reverse the attorneys' fees award and decline to impose attorneys' fees on appeal.

## FACTS

Beth Leonard purchased a nonrefundable ticket from Northwest Airlines to fly from Minneapolis to Las Vegas on October 24 and from Las Vegas back to Minneapolis on October 28, 1998. Leonard did not travel as ticketed, but rebooked to travel with Northwest at a later date. Northwest charged Leonard a $75 fee for reissuing the ticket.

The contract governing the relations between Northwest and its passengers is known as a "contract of carriage." Under the contract, a ticket holder with Leonard's type of nonrefundable ticket who does not fly as ticketed may, within one year of the ticket's issuance, apply the unused ticket fare toward a new contract of carriage, but must then pay an additional $75 fee. A ticket holder who does not use the original ticket or have it reissued forfeits the entire fare.

Leonard, on behalf of herself and other similarly situated ticket purchasers, sued Northwest for breach of contract and unjust enrichment, seeking damages, costs, attorneys' fees, and declaratory and injunctive relief. Leonard alleged not that Northwest failed to abide by the terms of the contract, but that the reissue fee is an illegal penalty under Minnesota law because it bears no rational relationship to the actual cost of reissuing the ticket.

Northwest moved to dismiss Leonard's complaint on preemption grounds and requested attorneys' fees and costs under Minnesota Rule of Civil Procedure 11. The district court dismissed Leonard's complaint and awarded $500 attorneys' fees. Leonard appeals the dismissal of her action and the imposition of attorneys' fees. Northwest moves under Minnesota Rule of Civil Appellate Procedure 139.06 and Minnesota Statutes section 549.211 (1998) for attorneys' fees incurred on appeal.

## ISSUES

I.  Does the Airline Deregulation Act preempt breach-of-contract and unjust-enrichment claims based on a state law theory of illegal penalty?

II. Are the claims unwarranted under existing law so as to justify sanctions under Minnesota Rule of Civil Procedure 11, and is the appeal frivolous under Minnesota Statutes section 549.211 (1998)?

## ANALYSIS

On appeal from the district court's dismissal of a complaint for failure to state a claim on which relief can be granted, we review de novo the claim's legal sufficiency. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997); *State ex rel. Graham v. Klumpp,* 536 N.W.2d 613, 615 (Minn.1995). When federal preemption bars relief under any set of facts consistent with the pleadings, the complaint fails to state a claim and must be dismissed. *See Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (interpreting Fed. R.Civ.P. 12(b)(6), federal counterpart to Minn. R. Civ. P. 12.02(e))).

### I

Whether a claim is preempted is a question of congressional intent that is "at bottom" a legal question of statutory construction. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992). An analysis of congressional intent therefore " 'begin[s] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.' " *Id.* (citation omitted). If the text itself does not resolve the preemption question, the analysis moves to the structure and purpose of the Act containing the preemption language. *New York State Conference of*

*Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 655–56, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995).

Until 1978, airlines were subject to federal regulation of fares, routes, and services under the Federal Aviation Act of 1958(FAA). *American Airlines v. Wolens*, 513 U.S. 219, 222, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995). The FAA did not have a preemption clause and in fact contained a saving clause providing that

> '[n]othing * * * in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.'

*Id.* (quoting FAA). In 1978, Congress enacted the Airline Deregulation Act. The enactment was motivated by congressional belief that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality * * * of air transportation services.' " *Morales*, 504 U.S. at 378, 112 S.Ct. at 2034 (quoting ADA). To prevent states from undoing deregulation, Congress included a preemption clause:

> [A] State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier.

49 U.S.C. § 41713(b)(1) (1994). But Congress retained the FAA's saving clause, *see* 49 U.S.C. § 40120(c) (1994), thereby reinforcing the judicial presumption against preemption, particularly on matters commonly reserved to state regulation. *See Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir.1999) (ADA does not vitiate traditional presumption against preemption).

In two successive cases, the U.S. Supreme Court forged a two-part test for resolving whether a state claim is preempted by the ADA. *Wolens*, 513 U.S. at 226, 115 S.Ct. at 823; *Morales*, 504 U.S. at 384, 112 S.Ct. at 2037. To be preempted, the claim must (1) relate to prices, routes, or services, and (2) constitute an enactment or enforcement of state law. *Wolens*, 513 U.S. at 226, 115 S.Ct. at 823. Leonard asserts that her claims are not preempted because they neither relate to price or services nor attempt to enact or enforce state law. We address Leonard's arguments on each of the prongs of the preemption test in turn.

### Relate to

In defining the first prong of the preemption test, the Court has applied a textual "plain-meaning" interpretation to the phrase "relating to."[1] *Morales*, 504 U.S. at 383, 112 S.Ct. at 2037. In *Morales v. Trans World Airlines*, the Court drew from its previous interpretation of the similarly worded Employment Retirement Income Security Act (ERISA) and adopted a standard that gave the "relating-to" phrase a broad preemptive purpose. *Id.* at 384, 112 S.Ct. at 2037. Under this standard, "[s]tate enforcement actions having a *connection with or reference to* airline 'rates, routes, or services' are preempted." *Id.* (emphasis added) (citation omitted).

Applying the "connection with" or "reference to" standard, the *Morales* Court held that the ADA preempted state enforcement of advertising regulations. *Id.* at 391, 112 S.Ct. at 2041. The Court reasoned that the advertising provisions related to fares within the meaning of the ADA not only because they expressly referred to them, but also because they reduced the

---

1. Prior to a 1994 recodification, the preemption clause provided that

   [n]o state * * * shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier.

49 U.S.C.A. § 1305(a)(1), *cited in Wolens*, 513 U.S. at 222–23, 115 S.Ct. at 817. Congress intended the revision to make no substantive change. *Wolens*, 513 U.S. at 222–23 n. 1, 115 S.Ct. at 821 n. 1.

incentive to price competitively. *Id.* at 388, 112 S.Ct. at 2039 (" '[w]here consumers have the benefit of price advertising, retail prices often are dramatically lower than they would be without advertising.' ").

Similarly, in *American Airlines v. Wolens,* the Court held that the ADA preempted a claim that American Airlines' retroactive modification of its frequent-flyer program violated the Illinois Consumer Fraud and Deceptive Business Practices Act. *Wolens,* 513 U.S. at 228, 115 S.Ct. at 823. The Court concluded with no difficulty that the "claims relate to 'rates,' i.e., American's charges in the form of mileage credits for free tickets and upgrades, and to 'services,' i.e., access to flights and class-of-service upgrades." *Id.* at 226, 115 S.Ct. at 823.

Since the 1992 *Morales* decision, however, the Court in its ERISA decisions has retreated from a purely textual interpretation of "relating to" and has shifted to an analysis of ERISA's structure or purpose to determine the scope of its preemption. In 1995, the Court noted that an "uncritical literalism" in applying the "connection to" language "is no more help than in trying to construe 'relate to.' " *Travelers,* 514 U.S. at 656, 115 S.Ct. at 1677. Thus, the Court concluded that it must "go beyond the unhelpful text" and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* In 1997, relying on *Travelers,* the Court again defined ERISA's preemptive reach by looking to ERISA's objectives. *California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 325, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997) (analysis of "whether a state law has the forbidden connection" looks to objectives of ERISA and effect of state law on ERISA plan).

Some federal courts have adopted the Court's narrowed ERISA preemption analysis in resolving controversies arising under the ADA's preemption clause. The Ninth Circuit, for example, has concluded that Congress intended to preempt "only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir.1998) (en banc). Similarly, the Second Circuit has observed that " '[r]elated to' appears to be developing, to some degree, to mean whether state law actually 'interferes' with * * * airline deregulation." *Abdu–Brisson v. Delta Air Lines, Inc.,* 128 F.3d 77, 82 (2d Cir.1997).

Under either the *Morales* textual standard or the Court's narrowed structure-and-purpose analysis of ERISA, Northwest's reissue fee relates to price. As the district court recognized, the $75 fee is a price the airline charges for reissuing an existing ticket for travel on a different day. Leonard's argument that the $75 fee does not relate to price because it does not affect what Northwest charges for travel from Point A to Point B is unpersuasive. The ADA's reach is not so limited. Also unpersuasive is Leonard's assertion that the reissue fee is unrelated to price because it is not included in the ADA's definition of price. The Act defines "price" as "rate, fare, or charge" without any further limitation (e.g., rate for what). 49 U.S.C. § 40102(a)(35) (1994). Leonard would have this court construe the term to mean "rate for transport," but the Act contains no such limiting language. Thus, applying the *Morales* textual-interpretation standard, we cannot say that the fee an airline charges for reissuing a ticket does not relate to price.

We reach the same conclusion under the structure-and-purpose standard. We are not persuaded by Leonard's argument that the application of penalty laws would not frustrate the intent of the ADA. She asserts that Congress must have contemplated state penalty laws because these laws promote efficiency, which is the driving force behind the ADA. *See* Daniel A. Farber, *Contract Law and Modern Economic Theory,* 78 *Nw. U.L.Rev.* 303, 333–39

(1983); Richard A. Posner, *Economic Analysis of the Law* 128–29 (4th ed.1992). Congress expressed more than a desire to promote efficiency. It expressed a belief that efficiency is best promoted by deregulation of prices, routes, and services. Thus, because Leonard's claims would frustrate congressional intent to promote efficiency through price deregulation, the claims relate to price under the Court's more recent structure-and-purpose analysis.

Having concluded that Leonard's claims relate to and affect price, we do not address whether they relate to services. Instead, we turn to the second part of the preemption test, whether Leonard's claim requires the enactment or enforcement of a state law, regulation, or other provision.

### Enactment or enforcement

In *Wolens,* the Court held that contract claims relating to frequent-flyer benefits did not involve the enactment or enforcement of state laws, reasoning that the

> terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard or other provision having the force and effect of law.'"

*Wolens,* 513 U.S. at 228–29, 115 S.Ct. at 824 (citation omitted).

The Court distinguished, however, between contract claims that seek simply to enforce the bargain of the parties and those that require the enforcement of state law or policy outside the contract:

> This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 233, 115 S.Ct. at 826. *See also Smith v. Comair, Inc.,* 134 F.3d 254, 257 (4th Cir.1998) (contract claim preempted when airline's defenses to breach were based on federal law "which is clearly external to the parties' agreement").

Applying *Wolens,* federal courts have found many contract claims not preempted by the ADA. *See In re Air Transp. Excise Tax Litigation,* 37 F.Supp.2d 1133, 1140 (D.Minn.1999) (dispute over whether Federal Express breached contract with customers by continuing to collect amount equal to expired tax); *Deerskin Trading Post, Inc. v. UPS of America,* 972 F.Supp. 665, 672–73 (N.D.Ga.1997) (dispute over whether UPS followed contractual provisions for determining packages' weight); *Chrissafis v. Continental Airlines, Inc.,* 940 F.Supp. 1292, 1298 (N.D.Ill.1996) (contract dispute over passenger's right to reboard plane); *Seals v. Delta Air Lines,* 924 F.Supp. 854, 858 (E.D.Tenn.1996) (dispute over whether contract required Delta to provide wheelchairs at airports); *Chukwu v. Board of Directors Varig Airline,* 880 F.Supp. 891, 895 (D.Mass.1995) (contract dispute alleging failure to transport).

■■■■ Leonard's claims rest on a Minnesota common-law contract rule against penalties. The rule against contract penalties is an equitable doctrine arising from a public policy against compulsion and has at its foundation the unconscionability doctrine. E. Allan Farnsworth, *Contracts,* § 12.18 (1982); John D. Calamari & Joseph M. Perillo, *Contracts,* 564–65 (1977). The parties' bargain is irrelevant to the rule and often is frustrated by its application. Farnsworth, *supra,* at § 12.18; Calamari & Perillo, *supra,* at 564–65. Leonard's claims would require the district court to take into account public policy considerations outside Leonard's agreement with Northwest. Because the claims are unrelated to the contract of carriage with Northwest, but instead seek to enforce state-imposed obligations against contract penalties, they are preempted.

Other state courts' decisions support our conclusion that the ADA preempts illegal-penalty claims. *See Blackner v. Continen-*

*tal Airlines*, 311 N.J.Super. 10, 709 A.2d 258, 260 (App.Div.1998) (dismissing breach-of-contract claims arising from $60 surcharge to replace lost ticket), *certification denied*, 156 N.J. 405, 719 A.2d 637 (1998), *cert. denied*, 525 U.S. 1142, 119 S.Ct. 1034, 143 L.Ed.2d 42 (1999); *Boon Ins. Agency, Inc. v. American Airlines*, No. 98–08724 (Travis County, Tex. Feb. 2, 1999) (dismissing breach-of-contract claim arising from reissue fee) (appeal pending). These decisions are, of course, not binding on us, but provide comparative analysis and insight.

■ Leonard argues that her claims should not be preempted because they cannot be brought in any other forum. *See Wolens*, 513 U.S. at 231–32, 115 S.Ct. at 825. Congress has, however, retained in the federal Department of Transportation (DOT) the authority to regulate trade practices of the airlines. *Id.* at 228 n. 4, 115 S.Ct. at 823 n. 4. The DOT has used this authority to regulate reissue fees. 14 CFR § 253.7 (1999). Although the DOT has chosen only to require conspicuous notice of the fees, it could also choose to regulate the amounts. Thus, while Leonard does not have another forum in which she can adjudicate her grievance with Northwest directly, she can take her grievance to the DOT and ask it to take action. *See Wolens*, 513 U.S. at 228 n. 4, 115 S.Ct. at 823 n. 4 (noting that although consumer fraud claims preempted, plaintiff could seek recourse through the DOT); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987) (availability of federal remedy is not a prerequisite to federal preemption).

Leonard also asserts that enforcement of the penalty rule should not be preempted because the rule is uniform in all 50 states. Leonard cites footnote eight in *Wolens* for the proposition that uniform laws are not preempted. 513 U.S. at 233, 115 S.Ct. at 826 n. 8. Footnote eight addresses the argument that enforcement of the same agreement in different states might lead to differing interpretations of

the agreement. *Id.* But the Court expressed its lack of concern about differing interpretations, noting that contract law is relatively uniform. *Id.* Thus, the court's footnote does not support an argument that *any* law may be imposed on the airlines so long as it is uniform. In fact, the *Morales* decision defeats that argument, since it involved consumer-protection statutes that were mostly uniform. 504 U.S. at 379, 112 S.Ct. at 2034.

## II

■ Under Minnesota Rule of Civil Procedure 11, the signature of an attorney or party on a pleading certifies that the pleading is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Minn. R. Civ. P. 11. Rule 11 authorizes the court to impose appropriate sanctions, including attorneys' fees, when a pleading is signed in violation of the rule. *Id.* The main purpose of rule 11 is to deter frivolous claims and defenses. *Uselman v. Uselman*, 464 N.W.2d 130, 142 (Minn.1990). But the rule should be strictly construed:

> [A]s a matter of public policy, * * * the rule should be construed somewhat narrowly—while some sanctionable conduct might under these circumstances escape discipline, that is preferable to deterring legitimate or arguably legitimate claims.

*Id.* Sanctions should not be imposed when "counsel has an objectively reasonable basis for pursuing a factual or legal claim or when a competent attorney could form a reasonable belief a pleading is well-grounded in fact and law." *Id.* at 143 (citations omitted).

■ We review the propriety of rule 11 sanctions generally under an abuse-of-discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990); *Uselman*, 464 N.W.2d at 142. But a legal determination that a pleading is not warranted by existing law or a good-faith

argument may be set aside by an appellate court if the determination rests on an erroneous view of the relevant law. *Cooter & Gell*, 496 U.S. at 402, 110 S.Ct. at 2459; *see also Uselman*, 464 N.W.2d at 142 (stating that because Minn. R. Civ. P. 11 and Fed.R.Civ.P. 11 are essentially the same, cases interpreting federal rule offer valuable guidance).

■ This court may also award attorneys' fees incurred on appeal if an appeal is frivolous. Minn.Stat. § 549.211 (1998). The decision of whether to award attorneys' fees for frivolous claims rests within this court's broad discretion. *Van Vickle v. C.W. Scheurer & Sons, Inc.*, 556 N.W.2d 238, 242 (Minn.App.1996).

■ Although we rule against Leonard, we cannot characterize her claims as frivolous or unwarranted by existing law. As the Supreme Court has recognized, ADA preemption is an area of the law that may not be settled "on the basis of one or two cases, but require[s] a closer working out." *Wolens*, 513 U.S. at 234–35, 115 S.Ct. at 827. While *Wolens* articulates the analysis in which courts must engage, the "line separating allowable claims from ADA-preempted ones remains fuzzy." *In re Air Transp. Excise Tax Litigation*, 37 F.Supp.2d at 1140. Furthermore, Leonard's interpretation of the ADA after *Wolens* is no more frivolous or unwarranted than were the *Wolens* plaintiffs' claims in light of *Morales*. Had the Illinois courts imposed sanctions in that case, the plaintiffs might not have appealed and the Supreme Court might not have decided *Wolens*, a decision that has become crucial to ADA-preemption analysis. In deterring frivolous claims, we must be careful not to deter colorable claims for changes in the law or to impede further evolution of existing precedent. We therefore reverse the district court's attorneys' fee award. For the same reasons, we decline to award fees incurred on appeal.

## DECISION

Leonard's breach-of-contract and unjust-enrichment claims are preempted by the ADA because they relate to price and seek the enforcement of state law. We therefore affirm the dismissal of Leonard's claims. But Leonard's claims are not frivolous and do not justify attorneys' fees under rule 11 or Minnesota Statutes section 549.211 (1998). We therefore reverse the district court's imposition of attorneys' fees and decline to impose an award of fees incurred on appeal.

**Affirmed in part and reversed ·in part; motion denied.**